UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE WAGLE,

        *Plaintiff,*

v.

CORIZON,
SHAY SATTLER,
JENNIFER MAGDA,
JOHN DOE,

        *Defendants.*

_____/

CASE NO. 4:19-cv-13787

DISTRICT JUDGE STEPHANIE DAWKINS DAVIS
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 31, 40, 43)

### I.  RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **DENY** Defendants' motions for summary judgement (ECF Nos. 31, 40, 43) and hold an evidentiary hearing to determine whether Plaintiff exhausted his administrative remedies with respect to Corizon. I also **RECOMMEND** that Plaintiff's official capacity claims against Magda, Sattler, Corizon, and John Doe, be **DISMISSED** *sua sponte*.

### II.  REPORT

#### A.    Background

Plaintiff is a prisoner in the custody of the Michigan Department of Corrections ("MDOC") who alleges that defendants, employees and contractors of the MDOC, failed to provide adequate medical treatment after he was assaulted by other prisoners at the G.

1

Robert Cotton Correctional Facility (JCF).  (ECF No. 1, at PageID.1–3, 8–9.)  On March

5, 2019, Plaintiff was assaulted by two other JCF inmates.  (*Id.* at PageID.4.)  Following

this assault, Plaintiff was evaluated in the prison's health care unit.  Although Plaintiff

reported a headache and had visible abrasions and bumps on his face, he was subsequently

placed in a cell without treatment.  (*Id.* at PageID.4–5.)  That night, Plaintiff informed the

nurse in his unit, Jennifer Magda, that he had "severe pain in [his] face" and "a headache";

however, although Plaintiff's "face was visibly swollen and purple," Magda declined to

provide Plaintiff with medical assistance.  (*Id.* at PageID.5.)

The following morning, when Plaintiff tried to get out of his bed, he "passed out,"

fell, and "smashed the left side of [his] face on" his "sink."  (*Id.*)  Plaintiff was transported

to a hospital where he remained until Tuesday, March 12.  (*Id.* at PageID.6.)  Plaintiff

returned to JCF, and on the following Sunday, March 17, he filed a grievance against the

"MDOC, Corizen [sic], healthcare staff at JCF, administration at JCF," and any other

responsible individual, alleging that their failure to adequately treat him caused his fall on

March 6.  (ECF No. 43-1, PageID.237.)  This grievance was not received by the MDOC

until April 1, and it was rejected as untimely.[1]  (*Id.*)  Plaintiff's grievance, along with

MDOC's rejection letter, was returned to Plaintiff on April 8.  (*Id.*)  On May 15, Plaintiff

filed a "Step II" grievance, appealing his earlier denial, but this grievance was rejected, and

was returned to Plaintiff on May 29.  (*Id.* at PageID.235–36.)  Plaintiff's Step II grievance

form was received by the MDOC past the applicable deadline; however, on his grievance

---

[1] The exact date this grievance was received is not clear.  Although the MDOC wrote on the grievance form that it was received on April 1, the form is also stamped as received on March 29.  (*Id.*)

form, Plaintiff explained he filed his Step II form late because, "[d]espite several requests" JCF did not provide him with the appeal form until May 15, the day he submitted his Step II grievance. (*Id.* at PageID.235.) Plaintiff also explained that he had been "transferred to another facility" after filing his Step I grievance, and alleged that the "MDOC" was "intentionally hindering" the grievance process. (*Id.*)

Plaintiff later filed a Step III grievance, which was received on June 17 and denied as untimely. (*Id.* at PageID.232.) The record does not contain any information on when Plaintiff's Step III grievance form was sent to the MDOC. (*See id.*)

After the MDOC rejected Plaintiff's Step III form, Plaintiff filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment to be free from cruel and unusual punishment. (ECF No. 1.) Subsequently, Defendants, Jennifer Magda, Shay Sattler, and Corizon, filed separate motions for summary judgment, arguing that Plaintiff failed to properly exhaust his administrative remedies.[2] (ECF Nos. 31, 40, 43.) Plaintiff responded to each motion and briefing is complete. (ECF Nos. 33—34, 45–48.)

## B.     Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the

---

[2] Sattler's brief incorporated Magda's entire brief (ECF No. 31) by reference and made no additional arguments. (ECF No. 40.) Likewise, her reply brief simply incorporated Magda's reply brief by reference. (ECF No. 48.)

non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary

4

judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## C. Exhaustion Under the PLRA

The PLRA provides that prisoners may not bring a § 1983 action against prison officials, challenging the conditions of their confinement, without first exhausting their available administrative remedies. 42 U.S.C. § 1997e(a) (2012); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Further, prisoners must "properly" exhaust their administrative remedies, meaning that they must "compl[y] with

an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006). Failure to exhaust administrative remedies in an affirmative defense that must be raised by the defendant. *Jones v. Bock*, 549 U.S. 199 (2007).

While prisoners must exhaust their administrative remedies prior to filing a complaint in federal court, this duty extends only to those remedies that are "available" to the prisoner. *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, a prisoner "must exhaust available remedies, but need not exhaust unavailable ones." *Id.* An available remedy is one that is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 732–38 (2001)).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies in a timely manner at Steps I and II of the MDOC's three-step internal grievance process. However, I suggest that genuine disputes of material fact exist as to whether Plaintiff's administrative remedies were available to him, I suggest that because the Defendants have failed to show that they are entitled to judgment as a matter of law. Accordingly, I suggest that Defendants' motions be denied.

### 1. Plaintiff's Step I Grievance

Magda, Sattler, and Corizon argue that Plaintiff failed to exhaust his administrative remedies at Step I; however, I suggest that Plaintiff was not required to exhaust his Step I grievance because this remedy was unavailable. An administrative remedy may be unavailable when it is so "opaque" that "practically speaking" it becomes "incapable of use." *Id.* at 643. This is a high bar that requires the policy to be "essentially 'unknowable'" such "that no prisoner can make sense of what it demands." *Id.* at 644 (quoting *Goebert v.*

*Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007)).  It is not enough for a policy to be subject to a reasonable "debate with respect to" its "meaning." *Id.*  In such situations, an administrative remedy is available, but courts should interpret a reasonable meaning that supports exhaustion. *Id.*  Only where an administrative policy is "so confusing" that "no reasonable prisoner can use" it, is the policy unavailable. *Id.*

For example, in *Murphy v. Grochowski*, the Middle District of Pennsylvania held that a grievance procedure was unavailable to a transferred inmate because "a reasonable prisoner" would believe that it only applied to inmates currently in the prison.  3:18-cv-01404, 2020 WL 806584, at *11 (M.D. Pa. Jan. 7, 2020).  The plaintiff in *Murphy* was incarcerated in a Pennsylvania prison, but after threatening to sue the prison, he was "immediately transferr[ed]" to a prison in a different county. *Id.* at *2.  Both prisons had separate grievance policies. *See id.* at *8.  After he was transferred, the plaintiff filed a lawsuit against the prison official who transferred him without first filing any grievances. *Id.* at *2.  The prison official argued that the plaintiff had failed to exhaust his administrative remedies. *Id.*  The Court disagreed, finding that because the original prison's grievance policies suggested that they only applied inmates incarcerated at that prison. *Id.* at *11.  Indeed, not only were the policies silent "about whether the grievance process [was] available" to transferred prisoners, but it contained language suggesting that the grievance policy was only available to inmates incarcerated at that specific prison. *Id.* Specifically, the policy stated that "'[o]ffenders who have a pending grievance at the time of release lose all standing . . . .'" *Id.*  The policy also contained "numerous references to it being an 'internal' mechanism." *Id.*  Accordingly, the Court concluded that the prison's

grievance policy was not available to the plaintiff because "an ordinary prisoner" in the plaintiff's position could not "determine what [was] required of him." *Id.* at *14.

Similarly, here, MDOC's policies were so opaque that they were incapable of use by a reasonable prisoner. The MDOC provides a three-step administrative exhaustion process for grievable matters. (ECF No. 31-2.) Prisoners are required to appeal their grievances through all three steps before filing suit in a district court, and each grievance must be filed by the applicable deadline unless the prisoner can provide a "valid reason" for the delay. *Id.* at PageID.130–31.

At Step I, a prisoner must "attempt to resolve the issue with the appropriate staff member within two business days" of "becoming aware of a grievable issue" before filing a Step I grievance. (*Id.* at PageID.132.) This requirement may be excused where the prisoner is "prevented by circumstances beyond his/her control" from resolving the issue with the appropriate staff member. (*Id.*)

Prisoners who attempt to resolve their issue with the appropriate staff member then have "five business days" from the date they attempted to resolve their issue, to file a step one grievance. (*Id.* at PageID.133.) Thus, the deadline for a step one grievance is determined by the date the prisoner attempts to resolve the issue with the appropriate staff member. (*See id.* at PageID.132–33.)

However, the policies do not provide a procedure for prisoners who have been "prevented" from resolving their matter with a staff member "by circumstances beyond" their "control." (*See id.*) The deadline for step one grievances is determined exclusively by the date prisoners attempt to resolve their issue with staff, and although the policy

8

excuses some prisoners from resolving their issue with staff, it does not provide these prisoners with any ascertainable deadline for their Step I grievance. (*Id.*)

After his fall, Plaintiff was hospitalized for nearly an entire week. (ECF No. 43-1, PageID.237.) Certainly, during this time, Plaintiff could not have resolved this issue with the appropriate officers. (*See id.* at PageID.237–38; ECF No. 31, PageID.124.) Thus, Plaintiff was excused from attempting to resolve his issue with staff. (*See* ECF No. 43-1, PageID.238 (rejecting Plaintiff's Step I grievance as untimely, but not for failure to resolve his issue with a staff member).) However, because Plaintiff was excused from resolving the issue with the appropriate staff member, the MDOC regulations provided no guidance on when his Step I grievance was due. *See Cook v. Cashler*, No. 1:11-cv-637, 2013 WL 1213678, at *11 (W.D. Mich. Mar. 5, 2013), *report and recommendation adopted by Cook v. Cashler*, No. 1:11-cv-637, 2013 WL 1213616 (2013); (ECF No. 31-2, PageID.132–34.) Indeed, not only was it impossible for Plaintiff to determine the exact deadline for his grievance, but it is not clear whether there was a deadline for his Step I grievance to begin with.

Without explanation, Magda suggests that Plaintiff's "start date from which [he] would need to resolve the issue with staff" was March 12, 2019, the date he was released from the hospital. (ECF No. 31, PageID.124.) Accordingly, Plaintiff had until March 21 to submit his Step I grievance—"seven business days" from March 12. (*Id.*) This argument fails for several reasons. First, even accepting Magda's interpretation of the MDOC policy, Plaintiff submitted his Step I grievance on time. The MDOC policy applicable at the time, provided that grievances were "considered filed on the date *sent* by the grievant." (ECF

No. 31-2, PageID.133 (emphasis added).)  Plaintiff's step one grievance was sent to the

MDOC less than four business days after March 12.  And, although Magda argues that

Plaintiff should have explained, in his grievance, why he waited three business days to file

his grievance, the MDOC policy provides no such requirement.  (*See id.* at PageID.132–

34.)

Nor do I find that Magda's interpretation of the MDOC policy to be persuasive.

First, Magda's assertion that Plaintiff's hospitalization tolled the start date for him to

address the issue with staff and file a grievance, lacks any support from the policy.  (ECF

No. 31, PageID.124.)  The policy contains no language providing that prisoners who are

prevented from resolving their issue with the appropriate staff member must still attempt

to do so once they are able.  (ECF No.31-2.)  To the contrary, it excuses these individuals

from resolving the issue with staff.  (*Id.* at PageID.132.)  Indeed, the policy states:

> [p]rior to submitting a written grievance, the grievant shall attempt to resolve
> the issue with the staff member involved within two business days after
> becoming aware of a grievable issue, unless prevented by circumstances
> beyond his/her control or if the issue falls within the jurisdiction of the
> Internal Affairs Division in Operations Support Administration.

(*Id.*)  Perhaps one might interpret the conditional clause to excuse only the requirement

that a prisoner resolves the issue within two days, and not the requirement that the prisoner

must resolve the issue with staff.  Even so, this interpretation provides little guidance.  If

this two-day timeline is excused, is it excused indefinitely or is it tolled until the prisoner

can address the issue with the appropriate staff member?  If it is excused indefinitely, then

how long does the prisoner have to file his or her Step I grievance?  And on what day would

this timeframe begin?  The answers to these questions are necessary to determine the

deadline for the Step I grievance, but the policy provides no guidance, and this Court will not read in requirements that do not exist. *See General Med., P.C. v. Azar*, 963 F.3d 516, 521 (6th Cir. 2020); *United States v. Cheiman*, 578 F.2d 160, 164 (6th Cir. 1978). It is the MDOC's "job to write" its internal policies, and it is the court's "job to interpret them." *See United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 778 (6th Cir. 2016) (McKeague, J., concurring).

Magda's strained interpretation of the MDOC policy illustrates how the policy is so "opaque" that an ordinary prisoner cannot make sense of what it demands—the policy fails to establish when a prisoner in Plaintiff's situation can file a Step I grievance. Accordingly, because a reasonable prisoner in Plaintiff's circumstances could not "determine what [was] required of him" or her, I suggest that Plaintiff did not fail to exhaust an available administrative remedy at Step I, and Defendants have failed to show that they are entitled to judgment as a matter of law with respect to Plaintiff's Step I grievance. *See Ross*, 578 U.S. at 643.

### 2. Plaintiff's Step II Grievance

Magda, Sattler, and Corizon also argue that Plaintiff filed an untimely Step II grievance.[3] However, Magda and Sattler did not contest this issue in their motions for summary judgment, but instead waited to raise the issue in their reply briefs.[4] (ECF No. 34, PageID.165; ECF No. 48, PageID.280.) I suggest that this issue has been waived by

---

[3] None of the Defendants argue that Plaintiff's Step III grievance was untimely.
[4] Although Sattler filed her motion after Magda had filed her reply brief, Sattler's motion only incorporated Magda's principal brief. (ECF No. 40, PageID.204.) Sattler only adopted Magda's reply brief once she filed her own reply brief. (ECF No. 48, PageID.280.)

both Defendants—an argument may not be raised for the first time in a reply brief. *Sundberg v. Keller Ladder*, 189 F. Supp.2d 671, 682–83 (E.D. Mich. 2002) (citing *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993)).  And for good reason, such a practice deprives the responding party of an opportunity to rebut the movant's arguments.

Only Corzion addressed this issue in its principal brief; however, I suggest that genuine issues of material fact exist as to whether Plaintiff's administrative remedies at Step II were available to him.

An inmate who is dissatisfied with the disposition of his or her Step I grievance, or does not receive a response to his or her Step I by the time the response is due, may file a Step II grievance using the appropriate form.  (ECF No. 31-2, PageID.134–35.)  The Step II grievance functions as an appeal of the Step I grievance.  (*See id.*)  This grievance is due within ten business days of the MDOC's response, or if the MDOC fails to respond, within ten business days of the response's due date.  (*Id.*)  Here, although Plaintiff received the MDOC's response to his Step I grievance on April 8, he did not submit his Step II grievance until May 15.  (ECF No. 43-1, PageID.235, 237.)  Although Corizon argues that Defendant's Step II grievance was untimely, Plaintiff asserted, in his Step II grievance that despite "several requests" for an appeal form, none were provided to him until May 15, the date Plaintiff filed his Step II grievance.[5]

---

[5] Plaintiff argues that Defendants may not challenge the timeliness of his Step II grievance because his Step II grievance was not rejected as untimely by the MDOC; rather, it was rejected because the MDOC found Plaintiff's Step I grievance to be untimely.  (ECF No. 43-1, PageID.235–36.)  I suggest that this argument lacks merit.  It is true that defendants may not raise exhaustion as a defense where, at the administrative level, they chose to ignore their procedural rules and addressed a prisoner's grievances on the merits.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  However, where prison officials reject a grievance on procedural grounds, they are not prohibited from raising additional procedural deficiencies before the

An administrative remedy is unavailable where "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Where prison officials "devise procedural" roadblocks that prohibit a prisoner from properly exhausting his grievance, that administrative remedy is no longer available, and it need not be exhausted. *Id.*

One scenario where prison officials may "thwart inmates from" complying with grievance procedures is prison officials withhold the materials that a prisoner needs to properly exhaust his or her claims. *E.g.*, *Hunt v. Carver*, No. 1:19-00356, 2020 WL 9348170, at *8 (S.D. W. Va. Nov. 25, 2020). In *Hunt v. Carver*, the Southern District of West Virginia held that prison officials rendered their administrative remedies unavailable by withholding the necessary forms for the plaintiff to file his grievances. *Id.* The same officials also refused to provide the Plaintiff with an ink pen, even though the grievance policies required forms to be completed in black or blue ink, and, on one occasion, when the plaintiff attempted to mail his grievance, prison officials provided the plaintiff with an incorrect address. *Id.* The Court reasoned that these actions prevented the plaintiff from properly exhausting his administrative remedies. *Id.* Accordingly, the Court found that these remedies were unavailable. *Id.*; *accord Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Tilman v. City of St. Louis, Mo.*,

---

district court. *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *7 (E.D. Mich. July 31, 2018), *report and recommendation adopted by Cary v. Washington*, No. 17-cv-13217, 2018 WL 4501480 (2018); *McMurray v. Dunnigan*, No. 1:20-cv-847, 2021 WL 2878710, at *4 (W.D. Mich. June 7, 2021), *report and recommendation adopted by McMurray v. Dunnigan*, No. 1:20-cv-847, 2021 WL 2862588 (2021).

No. 4:21cv299, 2021 WL 981859, at *3–4 (E.D. Mo. Mar. 16, 2021); *see also Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

Here, Corizon is not entitled to judgment as a matter of law because genuine disputes of material fact exist as to whether Plaintiff's Step II grievance was available to him.  By arguing that Plaintiff's Step II grievance was untimely, Corizon tacitly suggests that the Step II grievance was available; however, taking the facts in the light most favorable to Plaintiff, Plaintiff's Step II grievance was not available.  See *Matsushita*, 475 U.S. at 587–88.  Indeed, Plaintiff's Step II grievance form states that he was transferred following his initial grievance and although he made several attempts to receive the necessary Step II grievance form, this form was not given to him until well after the deadline.  (ECF No. 43-1, PageID.235; ECF No. 31-2, PageID.133 ("[A] Prisoner/Parolee Grievance Appeal [form] (CSJ-247B) shall be used to file a Step II or Step III grievance.").)  Assuming these requests were made before the deadline, prison officials would have rendered Plaintiff's Step II grievance unavailable by withholding the required forms.  *Cf. Hunt v. Carver*, 2020 WL 9348170, at *8.  Accordingly, I suggest that summary judgment is not appropriate because genuine disputes of material fact exist as to whether Plaintiff was supplied with the required form in time to file his grievance.

Further, I suggest that the Court holds an evidentiary hearing on this issue.  *See Lee v. Willey*, 789 F.3d 673, 677–78 (6th Cir. 2015) (holding that courts may resolve factual disputes relevant to exhaustion through a bench trial).  Exhaustion is a matter of judicial administration that should be resolved by the court before the merits of a case are decided by a jury.  *Turner v. Clelland*, 1:15cv947, 2016 WL 6997500, at *12 n.16 (M.D. N.C. Nov.

30, 2016) (quoting *Dillon v. Rodgers*, 596 F.3d 260, 273 (5th Cir. 2010); *Lee v. Freeman*, No. 16-14162, 2017 WL 4158794, at \*6 (E.D. Mich. Aug. 25, 2017), *report and recommendation adopted by Lee v. Freeman*, No. 16-14162, 2017 WL 4150789 (2017). Thus, where a court must resolve factual disputes related to exhaustion, it generally will do so at an evidentiary hearing prior to trial. *See, e.g.*, *Miles v. Rink*, No. 2:19-cv-167, 2021 WL 2019765, at \*7 (W.D. Mich. Apr. 15, 2021), *report and recommendation adopted by Miles v. Rink*, No. 2:19-cv-167, 2021 WL 2018315 (2021); *Salem v. Mich. Dept. of Corrections*, No. 13-cv-14567, 2019 WL 4409709, at \*16–17 (E.D. Mich. Sept. 16, 2019).

Should the District Judge adopt this Report and Recommendation, an evidentiary hearing will be necessary to determine whether the MDOC's grievance procedures were available to Plaintiff at Step II.  This hearing should be conducted by the District Judge, or with consent of the parties, by the undersigned Magistrate Judge.  *See Lee*, 2017 WL 4150789, at \*1.  Additionally, counsel should be appointed for Plaintiff prior to this hearing.  *See id.* (citing *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004)).

### 3. Whether Plaintiff Raised New Issues in His Complaint

Alternatively, Corizon argues that Plaintiff failed to exhaust his administrative remedies at all steps, with respect to Corizon, because the issues raised in his grievances differ from those raised in his complaint.  Specifically, Plaintiff's complaint alleges that Corizon "failed to . . . ensure that medical staff were properly trained and experienced" and "maintained a policy to provide the minimum amount of care/treatment," whereas Plaintiff's Step I grievance simply describes the events surrounding his injury and lists

Corizon as a responsible party.  (*Compare* ECF No. 1, PageID.8–9, *with* ECF No. 43-1, PageID.237.)

A grievance only exhausts a prisoner's administrative remedies as to the individuals and issues identified in the grievance—a prisoner may not raise entirely new issues in his or her complaint.  *Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 2208560, at *11 (E.D. Mich. 2019), *report and recommendation adopted by Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 1147023 (2019) (citing *Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002)). Courts have consistently found that plaintiffs raise "new issues" before the district court when they assert entirely new claims arising out of either a distinct cause of action or an unrelated series of events.  *See, e.g.*, *Ford*, 49 F. App'x at 585 (holding that a plaintiff raised a new issue before the district court by alleging different constitutional violations, arising out of the same conduct, than what were alleged in his grievances); *Baldridge-El v. Gundy*, 238 F.3d 419 (6th Cir. 2000) (holding that a plaintiff raised new issues by referring to events that were not mentioned in his grievance).

Here, I suggest that Plaintiff's complaint does not raise any new issues regarding Corizon.  Plaintiff's grievances identify Corizon as a responsible party, detail the events surrounding his head injury, and argue that Corizon's "failure to evaluate and/or monitor" him violated the Eighth Amendment.  (ECF No. 43-1, PageID.237.)  Similarly, Plaintiff's Complaint names Corizon and argues that Corizon was responsible for the JCF medical staff's failure to properly evaluate his head injury, which violated his Eighth Amendment right to be free from cruel and unusual punishment.  (ECF No. 1, PageID.8–9.)  Both the grievance and the complaint address the same occurrence and the same constitutional

violation.  Plaintiff's complaint simply provides an explanation for how Corizon allegedly failed to "properly evaluate" him.  But the main thrust of the grievance and the complaint are identical—Corizon was responsible for JCF's failure to evaluate Plaintiff's head injury.

Moreover, I note that "[t]he point of requiring exhaustion is to flag problems for prison officials and permit them to expeditiously resolve the issues."  *Burley*, 2019 WL 2208560, at *11 (citing *Jones*, 549 U.S. at 219).  Thus, where a Plaintiff asserts an issue for the first time at the district court, it deprives prison officials of an opportunity to resolve the issue internally.  *See id.*  But this was not a concern here.  Corizon was named as a responsible party and the circumstances surrounding Plaintiff's injury were described in detail.  (ECF No. 43-1, PageID.237.)  Prison officials thus had an adequate opportunity to handle the issue internally.  The fact that these issues may have been caused by some negligent policy or procedure on Corizon's part is not relevant to this analysis—what matters is whether prison officials had an opportunity to resolve the events surrounding Plaintiff's injury internally.  *See Jones*, 549 U.S. at 219; *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . .").  Plaintiff is not suing Corizon because they generally have inadequate procedures, he is suing Corizon because of a specific incident, involving Corizon, where he was injured.  This incident was described adequately in both the complaint and the grievance.  Therefore, I suggest that Plaintiff has not raised a new issue in his complaint.

**D.    Corizon's Request for Leave to File a Second Motion for Summary Judgment**

Corizon asks this Court for leave to file a second motion for summary judgment on the merits of Plaintiff's claim, "[i]n the event that the Court does not grant dismissal . . . on the basis of exhaustion."  (ECF No. 43, PageID.215.)  Under this Court's local rules, a party may generally file only one motion for summary judgment, unless the Court grants leave to file additional motions.  E.D. Mich. LR 7.1(b)(2); *see U.S. S.E.C. v. Battenberg*, No. 06-14891, 2010 WL 1494766, at *2 n.3 (E.D. Mich. Apr. 14, 2010).  The decision to allow a party to submit multiple motions for summary judgment is within the sound discretion of the district court.  *Lexicon, Inc. v. Safeco Ins. Co. of America Inc.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006).  However, because courts tend to disfavor "piecemeal litigation at the summary-judgment stage," courts will generally only "permit the filing of a second motion for summary judgment if 'good reasons exist.'"  *Spengler v. Worthington Cylinders*, 514 F. Supp.2d 1011, 1021 (S.D. Ohio 2007); *Hudson v. City of Highland Park*, No. 2:16-cv-12369, 2020 WL 12676309, at *1 (E.D. Mich. Jan. 16, 2020).  Generally, a party asserts a "good reason" for leave to file a second motion for summary judgment where "one of the following grounds exists: '(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; [or] (3) need to correct a clear error or prevent manifest injustice.'"  *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).

Here, there have been no developments in the record or the applicable law that would warrant a need to file a second motion for summary judgment—Corizon, it appears, simply desired to avoid addressing multiple issues in its motion for summary judgment. Normally, this would not be an adequate basis to seek leave to file additional motions for

18

summary judgment because "[p]arties are generally expected to set forth all their arguments in support of summary judgment in a single dispositive motion." *Spengler*, 514 F. Supp.2d at 1021.

However, I suggest that leave to file an additional motion for summary judgment on the merits is appropriate, depending on the outcome of the recommended evidentiary hearing, and given the unique procedural posture of this case. Typically, a defendant has at least two opportunities to file dispositive motions—once at the pleading stage, and once pursuant to Rule 56. *See* Fed. R. Civ. P. 12(b), 56. But this is not true in cases governed by the PLRA. Under the PLRA, defendants need not answer a prisoner's complaint or file a dispositive motion unless directed by the court. 42 U.S.C. § 1997e(g); *Jones v. Barnhart*, Case No. 2:10-cv-12114, 2017 WL 1493005, at *2 (E.D. Mich. Apr. 26, 2017). Indeed, this is a right Corizon exercised for much of the litigation—Corizon's motion for summary judgment is currently the only dispositive motion it has filed.

Moreover, Corizon's decision to only address exhaustion in its brief is justified because exhaustion is a preliminary matter of judicial administration that should be addressed before the merits of a plaintiff's claims. *See Salem*, 2019 WL 4409709, at *16. Accordingly, the parties have not yet conducted discovery on the merits of Plaintiff's claims, as this could have wasted time and resources in the event that the Defendants' motions were granted. (*See* ECF No. 41 (granting Magda's motion to stay discovery)); *Hoosier v. Liu*, No. 2:16-10688, 2016 WL 6650386, at *1 (E.D. Mich. Nov. 10, 2016). It would be counterproductive, and unduly prejudicial to Corizon, for this Court to deny Corizon leave to file a motion for summary judgment before the parties have had a

meaningful opportunity to develop the record on the merits.  *See Mellender v. Dane County*, No. 06-c-298-c, 2007 WL 5613603, at *2 n.3 (W.D. Wis. Feb. 1, 2007) ("I note that the court usually grants leave to file a second summary judgment motion if a party's first motion . . . was based on procedural grounds such as failure to exhaust administrative remedies.").  Accordingly, I suggest that if Plaintiff's claim against Corizon survives the recommended evidentiary hearing, then Corizon should be granted leave to file a second motion for summary judgment.

      **E.**     **Sovereign Immunity**

      Because I recommend that Defendants' motions be denied, I will also take this opportunity to address whether this Court has jurisdiction over Plaintiff's remaining official capacity claims.  *See Pollington v. G4S Secure Solutions (USA) Inc.*, 712 F. App'x 566, 566 (6th Cir. 2018) ("[T]he district court was obligated to consider its jurisdiction sua sponte . . . ."); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (holding that sovereign immunity is a jurisdictional issue).

      The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  It is well established that a suit against a state officer in his or her official capacity is a suit against the entity he or she represents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Defendants Magda, Sattler, and John Doe are nurses or correctional officers employed by JCF and by extension, the state of Michigan.  (ECF No. 1, PageID.2–3.)  Therefore, by suing Defendants, who are all officials of the state of Michigan, in their official capacities, Plaintiff is effectively suing

the State of Michigan.  *See Maben v. Thelen*, 887 F.3d 252, 257, 270–71 (6th Cir. 2018) (holding that the Eleventh Amendment barred a suit against a prison guard in his official capacity); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000) ("[T]he MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity."); ; *Baskerville v. Blot*, 224 F. Supp.2d 723, 738 (S.D.N.Y. 2002) (holding that the Eleventh Amendment barred a lawsuit against "corrections officers [and] nurses employed by the New York State Department of Corrections" in their official capacities).[6]

Accordingly, I suggest that, under the Eleventh Amendment, this Court lacks subject matter jurisdiction over Plaintiff's official capacity claims against Defendants, insofar as Plaintiff requests monetary damages.  *See Ex parte Young*, 209 U.S. 123, 148 (1908) (holding that the Eleventh Amendment does not prohibit suits against states for injunctive relief); *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997) ("It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court.").

### F. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **DENY** defendants' motions for summary judgement (ECF Nos. 31, 40, 43) and hold an evidentiary hearing to determine whether Plaintiff exhausted his administrative remedies with respect to Corizon.  Should the Court adopt this recommendation, the undersigned suggests that counsel be appointed for plaintiff before the hearing is conducted. Further, should

---

[6] Corizon is not a state officer, nor is it an arm of the state; therefore, while it is not protected by sovereign immunity, it also has no "official capacity" to be sued in.  *Davis v. Buchanan County Mo.*, No. 5:17-cv-06058, 2020 WL 2616737, at *8–9 (W.D. Mo. Mar. 22, 2020).

Plaintiff's claim against Corizon survive this hearing, **I RECOMMEND** that the Court **GRANT** Corizon leave to file a second motion for summary judgment.

I also **RECOMMEND** that Plaintiff's official capacity claims against Magda, Sattler, Corizon, and John Doe, be **DISMISSED**, *sua sponte*.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.   Any objection must recite precisely the provision of this R&R to which it pertains.   Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D.

Mich. LR 72.1(d).   The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 21, 2021                S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge