UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE WAGLE,

    Plaintiff

v.

CORIZON, *et al.*,

    Defendants.
_____/

Case No. 19-13787

Stephanie Dawkins Davis
United States District Judge

**ORDER ADOPTING REPORT AND RECOMMENDATION (ECF No. 49)
AND OVERRULING OBJECTIONS (ECF Nos. 50, 51)**

**I.    PROCEDURAL HISTORY**

Plaintiff, Eddie Wagle, filed this prisoner civil rights lawsuit against Defendants on December 26, 2019. (ECF No. 1). The court referred the matter to Magistrate Judge Patricia T. Morris for all pretrial proceedings. (ECF No. 25). Defendants filed motions for summary judgment on the basis of exhaustion. (ECF Nos. 31, 40, 43). Judge Morris issued a report and recommendation (R&R) on December 21, 2021, recommending that the court deny Defendants' motions for summary judgment and further recommending that the court conduct an evidentiary hearing on the issue of exhaustion. (ECF No. 49). Defendants Magda and Sattler (MDOC Defendants) filed an objection, as did Wagle. (ECF Nos. 50, 51). Defendant Corizon did not object to the R&R, but filed a response to Wagle's objection. (ECF No. 53).

1

## II. LEGAL STANDARD

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that dispute the general correctness of the report and recommendation are improper. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id*. (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346. And, when objections are "merely perfunctory responses . . . rehashing . . . the same arguments set forth in the original petition,

reviewing courts should review [a Report and Recommendation] for clear error." *Ramirez v. United States*, 898 F.Supp.2d 659, 663 (S.D.N.Y. 2012); *see also Funderburg v. Comm'r of Soc. Sec.*, No. 15-10068, 2016 WL 1104466, at *1 (E.D. Mich. Mar. 22, 2016) (Hood, J.) (noting that the plaintiff's objections merely restated his summary judgment arguments, "an approach that is not appropriate or sufficient").

**III. FACTUAL BACKGROUND**

In the R&R, Judge Morris ably summarizes the factual background as follows:

> Plaintiff is a prisoner in the custody of the Michigan Department of Corrections ("MDOC") who alleges that defendants, employees and contractors of the MDOC, failed to provide adequate medical treatment after he was assaulted by other prisoners at the G. Robert Cotton Correctional Facility (JCF). (ECF No. 1, at PageID.1–3, 8–9.) On March 5, 2019, Plaintiff was assaulted by two other JCF inmates. (*Id.* at PageID.4.) Following this assault, Plaintiff was evaluated in the prison's health care unit. Although Plaintiff reported a headache and had visible abrasions and bumps on his face, he was subsequently placed in a cell without treatment. (*Id.* at PageID.4–5.) That night, Plaintiff informed the nurse in his unit, Jennifer Magda, that he had "severe pain in [his] face" and "a headache"; however, although Plaintiff's "face was visibly swollen and purple," Magda declined to provide Plaintiff with medical assistance. (*Id.* at PageID.5.)
>
> The following morning, when Plaintiff tried to get out of his bed, he "passed out," fell, and "smashed the left side of [his] face on" his "sink." (*Id.*) Plaintiff was

3

transported to a hospital where he remained until Tuesday, March 12. (*Id*. at PageID.6.) Plaintiff returned to JCF, and on the following Sunday, March 17, he filed a grievance against the "MDOC, Corizen [sic], healthcare staff at JCF, administration at JCF," and any other responsible individual, alleging that their failure to adequately treat him caused his fall on March 6. (ECF No. 43-1, PageID.237.) This grievance was not received by the MDOC until April 1, and it was rejected as untimely. (*Id*.) Plaintiff's grievance, along with MDOC's rejection letter, was returned to Plaintiff on April 8. (*Id*.) On May 15, Plaintiff filed a "Step II" grievance, appealing his earlier denial, but this grievance was rejected, and was returned to Plaintiff on May 29. (*Id*. at PageID.235–36.) Plaintiff's Step II grievance form was received by the MDOC past the applicable deadline; however, on his grievance form, Plaintiff explained he filed his Step II form late because, "[d]espite several requests" JCF did not provide him with the appeal form until May 15, the day he submitted his Step II grievance. (*Id*. at PageID.235.) Plaintiff also explained that he had been "transferred to another facility" after filing his Step I grievance, and alleged that the "MDOC" was "intentionally hindering" the grievance process. (*Id*.)

Plaintiff later filed a Step III grievance, which was received on June 17 and denied as untimely. (*Id*. at PageID.232.) The record does not contain any information on when Plaintiff's Step III grievance form was sent to the MDOC. (*See id*.)

IV. **ANALYSIS**

    A.    <u>MDOC Defendants' Objection</u>

The MDOC Defendants object to the R&R's suggestion that the Court should find a question of fact on the issue of whether Wagle exhausted his

administrative remedies because the MDOC policy lacked guidance as to when Wagle's Step I grievance was due. (ECF No. 50, PageID.307, citing ECF No. 49, PageID.289-290). The MDOC Defendants maintain that the answer is a simple calculation under the Policy Directive. MDOC Policy Directive (P.D.) 03.02.130 (eff. 07/09/07) ¶ P provides that a grievant has two business days after being aware of a grievable issue to attempt to resolve the issue with staff, and then has another five business days within which to file a Step I grievance. (ECF No. 31-2, PageID.132). Thus, according to the MDOC Defendants, a simple reading of this paragraph is that a grievant generally has seven business days to file a Step I grievance. And more specifically in this case, Defendants contend that the date Wagle returned from the hospital (March 12, 2019) should be the starting date from which he would need to try to resolve the issue with staff, giving him seven business days, or until March 21, 2019 to file his grievance. (ECF No. 31, PageID.124).

While prisoners must exhaust their administrative remedies prior to filing a complaint in federal court, this duty extends only to those remedies that are "available" to the prisoner. *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, a prisoner "must exhaust available remedies, but need not exhaust unavailable ones." *Id*. An available remedy is one that is "'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (quoting *Booth v. Churner*, 532 U.S. 731, 732–38

5

(2001)). An administrative remedy may be unavailable when it is so "opaque" that "practically speaking" it becomes "incapable of use." *Id*. at 643. This is a high bar that requires the policy to be "essentially 'unknowable'" such "that no prisoner can make sense of what it demands." *Id*. at 644 (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007)). It is not enough for a policy to be subject to a reasonable "debate with respect to" its "meaning." *Id*. In such situations, an administrative remedy is available, but courts should interpret a reasonable meaning that supports exhaustion. *Id*. Only where an administrative policy is "so confusing" that "no reasonable prisoner can use" it, is the policy unavailable. *Id*.

In rejecting the MDOC Defendants' claim that Plaintiff failed to exhaust his administrative remedies at Step I of the grievance process, Judge Morris concluded there were genuine issues of material fact regarding whether the grievance process was available. (ECF No. 49, PageID.287). At Step I, a prisoner must first attempt to resolve the issue with appropriate staff within two business days of becoming aware of the grievable issue. The grievance policy further provides that this requirement may be excused where the prisoner is prevented from doing so based on circumstances beyond his control. *Id.* at PageID.289. Then, the Step I grievance must be filed within five business days of the attempt to resolve the issue. *Id*. Judge Morris explains, however, that the grievance procedure does not identify when a Step I grievance is due if a prisoner is prevented from attempting

6

to resolve the grievance informally. Here, given that Wagle was hospitalized for nearly a week and could not have tried to resolve the issue informally within two business days, Judge Morris concluded that this requirement was excused. Defendants do not seem to dispute this conclusion.

Defendants suggested that the start date was tolled until Wagle was released from the hospital and thus, he had seven business days from his release from the hospital to file his Step I grievance. Judge Morris rejected this argument for multiple reasons. First, she observed that if that interpretation were accepted, then Wagle's Step I grievance was timely submitted, given that the MDOC policy provides that grievances are considered filed on the date they were sent by the grievant and Plaintiff sent his Step I grievance within four business days of his release from the hospital. Judge Morris also rejected this interpretation because nothing in the actual Policy Directive supports the notion of tolling. Thus, accepting this interpretation requires the court to read requirements into the policy that did not exist. *Id*. at 290-292. This "strained" interpretation, according to Judge Morris, illustrates how the Policy Directive is so "opaque" that an ordinary prisoner cannot discern its requirements as to when a Step I grievance must be

filed when a prisoner is excused from the requirement to informally resolve the issue with staff.[1]

The court finds Defendants' objection to be without merit. In the first instance, if the court accepted Defendants' interpretation of the Policy Directive – making the filing of the Step I grievance due on March 21, 2019 – the motions for summary judgment must still be denied because this interpretation only creates another material issue of fact. As Judge Morris rightly pointed out, there is evidence in the record that Wagle sent his Step I grievance on March 17, 2019, before the date Defendants maintain was the deadline. (ECF No 31-3, PageID.146). The Policy Directive specifically provides that "Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant." (ECF No. 31-2, PageID.133). Accordingly, this evidence suggests, under Defendants' own interpretation of the Policy Directive, that the grievance may have been improperly rejected as untimely. This creates a question of material fact because an improper rejection would constitute exhaustion. *Bailey v. Mich. Dept. of Corr.*, 2020 WL 4934314, *5 (E.D. Mich. Aug. 24, 2020) (citing *Johannes v. Washington*, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016)

---

[1] Judge Morris also concluded that there were genuine issues of fact as to whether Step II of the grievance procedure was available to Plaintiff. She concluded that the MDOC defendants waived this argument and rejected it as to Corizon. MDOC defendants have not objected to her conclusions.

(citing *Nelson v. Walsh*, 2017 WL 1212836, at *4 (E.D. Mich. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1100945 (E.D. Mich. Mar. 24, 2017)). And, defendants bear the burden of establishing that a rejection was proper. *Id*. Defendants have not done so here.

The court also agrees with Judge Morris' conclusion that the Policy Directive does not include express guidance on when a Step I grievance is due if a prisoner is excused from the requirement of informally attempting to resolve the matter with staff. Defendants do not point to any language in the Policy Directive supporting its suggestion that the informal resolution is tolled until such time as the impediment that prevented a prisoner from trying to informally resolve the issue is removed. Indeed, as aptly observed by Judge Morris, Defendants' suggested interpretation raises more questions than answers:

> Perhaps one might interpret the conditional clause to excuse only the requirement that a prisoner resolves the issue within two days, and not the requirement that the prisoner must resolve the issue with staff. Even so, this interpretation provides little guidance. If this two-day timeline is excused, is it excused indefinitely or is it tolled until the prisoner can address the issue with the appropriate staff member? If it is excused indefinitely, then how long does the prisoner have to file his or her Step I grievance? And on what day would this timeframe begin?

(R&R, ECF No. 49, PageID.291). The court agrees; in circumstances where a prisoner is excused from the two-day informal resolution requirement, the Policy

9

Directive is so "opaque" that an ordinary prisoner cannot make sense of when he is required to file his Step I grievance. Accordingly, Defendants' objection is overruled.

    B.    <u>Plaintiff's Objections</u>

        1.    Objection No. 1

According to Wagle, Judge Morris incorrectly stated that he "returned to JCF" when he filed the Step I grievance. (ECF No. 51, PageID.311, citing R&R, ECF No. 49, PageID.283). Even if Wagle is correct, this factual error is not material to Judge Morris' decision and the objection is overruled.

        2.    Objection No. 2

Wagle objects to Judge Morris' decision to allow Corizon to file a second motion for summary judgment addressing the merits of his claims. Wagle does not state a basis for this objection.

Corizon requested permission to file a second motion for summary judgment in the event the court did not dismiss the claims against it based on exhaustion. Judge Morris concluded that leave should be granted because exhaustion of administrative remedies – the only matter addressed in Corizon's first motion for summary judgment – is a preliminary matter that should generally be addressed before the merits of a plaintiff's claims. (ECF No. 49, PageID.300). Judge Morris also observed that no discovery had yet been conducted. Accordingly, she

concluded that Corizon should have the opportunity to file a second motion for summary judgment after the record on the merits had been developed. *Id*. at PageID.300-301.

The court first notes that Judge Morris' decision on this issue, which is a non-dispositive matter, is subject to a clearly erroneous standard of review. *Draughn v. Bouchard*, 2017 WL 3048667 (E.D. Mich. July 18, 2017) (citing Fed. R. Civ. P. 72(a)). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). This standard does not allow a reviewing court to reverse a magistrate judge's finding merely because it would have decided the matter differently. *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014). The court finds no error, and Wagle does not allege any, regarding the decision to allow Corizon to file a second motion for summary judgment on the merits. Accordingly, this objection is overruled.

   3.  Objection No. 3

Lastly, Wagle objects to the recommendation that his official capacity claims be dismissed based on his confusion regarding the law that applies to Eleventh Amendment immunity.

Judge Morris determined that the claims for money damages made against the MDOC defendants in their official capacities were barred by the Eleventh Amendment. The contours of Eleventh Amendment or sovereign immunity are well-defined. States and the federal government "possess[ ] certain immunities from suit in state and federal courts." *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (*en banc*). "This immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution and applies to claims against a State by citizens of the same State, claims against a State by citizens of another State, and actions against state officials sued in their official capacity for money damages." *Id*. (quoting *Barachkov v. 41B Dist. Court*, 311 Fed. Appx. 863, 866-67 (6th Cir. 2009) (quoting *Ernst*, 427 F.3d at 358) (internal quotation marks omitted). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Judge Morris correctly concluded that the claims brought against the MDOC defendants in their official capacities for money damages are barred by Eleventh Amendment immunity. Wagle's third objection is overruled.

V.  **ORDER**

For these reasons, the court **ACCEPTS** and **ADOPTS** the Report and Recommendation, **OVERRULES** Defendants' and Plaintiff's objections, and **DENIES** defendants' motions for summary judgment.

Given the factual issues that must be resolved regarding the exhaustion of administrative remedies, a bench trial on the issue of exhaustion must be conducted. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) ("[D]isputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial."). Accordingly, the court will appoint counsel for Plaintiff for the limited purpose of the bench trial on exhaustion. The case will be stayed for a period of 90 days, while the Court attempts to obtain pro bono counsel. If pro bono counsel is not obtained within 90 days, the stay will be lifted, and Plaintiff will proceed pro se. Further, within 10 days of counsel being appointed, the parties must notify the court whether they consent to the magistrate judge conducting the bench trial.

**IT IS SO ORDERED**.

Date: March 31, 2022         s/Stephanie Dawkins Davis
                             Stephanie Dawkins Davis
                             United States District Judge

I hereby certify that a copy of the foregoing document was mailed to counsel of

record and/or pro se parties on this date, March 31, 2022, by electronic and/or U.S. First Class mail.

S/ R. Loury<br>
Case Manager

14